# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

BRIDGETTE ROGERS,          )
                                     )

          Petitioner,       )
                                     )

v.                             )       **Case No. 15-CV-0069-JED-PJC**
                                     )

DEBBIE ALDRIDGE, Warden,[1]   )
                                     )

          Respondent.     )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Doc. 2) filed by Petitioner Bridgette Rogers, a state inmate appearing through counsel. Rogers challenges the constitutional validity of the judgment and sentence entered against her in Washington County District Court, Case Nos. CF-2009-45 and CM-2009-90. In those cases, a jury convicted Rogers of one felony, trafficking in illegal drugs after former conviction of two or more drug felonies; and two misdemeanors, operating a defective vehicle and improper tag display. She is currently serving a sentence of life without the possibility of parole. Rogers seeks habeas relief on five grounds. Respondent filed a response to the petition (Doc. 16), and provided the state court records necessary to adjudicate Rogers' claims (Docs. 16, 17). Rogers filed a reply (Doc. 24). For the reasons discussed below, the Court finds and concludes the habeas petition shall be denied.

---

[1]    Rogers is incarcerated at Mabel Bassett Correctional Center (MBCC) in McCloud, Oklahoma. *See* Doc. 2. MBCC's current warden, Debbie Aldridge, is therefore substituted in place of Rickey Mohan as party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts.* The Clerk of Court shall note this substitution on the record.

## BACKGROUND

Under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless the habeas petitioner rebuts that presumption "by clear and convincing evidence." Following review of the record, trial transcripts, trial exhibits, and other materials submitted by the parties, the Court finds the factual summary from the Oklahoma Court of Criminal Appeals' decision is adequate and accurate. Therefore, the Court adopts the following summary as its own:

On February 4, 2009, at approximately 2:30 a.m., Officer Adam Walker of the Bartlesville Police Department stopped a car being driven by Rogers because he noticed that the car's license tag was not illuminated as required by State law. After stopping Rogers' car, and as he approached the car on foot, Officer Walker noticed a clear plastic covering over the tag.

Officer Walker had a brief conversation with Rogers through the driver's side car window, obtained her driver's license and insurance verification, and then stepped away to run a check on the license. Less than one minute later, Officer Walker's supervisor, Sergeant Glen McClintock arrived and began a drug sweep of the outside of Rogers' car with his drug dog. One minute later, the dog alerted at the driver's side window.

After the dog alert, Rogers was removed from the car and Officer Walker began a search of the passenger compartment. He found an off-white rock-like substance in the driver's seat, on the driver's side floor, and on the front passenger's seat.

While Officer Walker was searching Rogers' car, Officer Denise Silva arrived and performed a pat down search on Rogers, who was wearing a long winter coat. Rogers told Officer Silva she was wearing two sanitary napkins and Officer Silva felt a "crinkle" in that area, but did not check it further. Officer Silva did not find anything incriminating, but did find approximately $500.00 in cash in one of Rogers' pants pockets. After Officer Walker found the rock-like substances, Rogers was arrested and Officer Silva transported her to the Bartlesville jail.

During the ride to the jail, Officer Silva heard "rustling of paper and crunching in the backseat" (Tr. Vol. 2 at 84). She told Rogers that if there was something in the backseat or anywhere on [Rogers'] person, she would find it. She noted that even though Rogers' hands were handcuffed behind her back, there was a lot of movement, "pushing around, moving around" (Tr. Vol. 2 at 85).

After Rogers was delivered to the jail, Officer Silva searched her patrol car and found a white banking envelope stuffed in the corner of the rear seat where Rogers had been sitting. Officer Silva searched the patrol car at the beginning of her shift and had not transported anyone since that search.

Officer Silva summoned Officer Walker, and Walker retrieved the envelope. Inside the envelope, he found two plastic baggies containing off-white rock-like substances similar to the substances he found in Rogers' car. Later, when Officer Walker searched Rogers' purse, he found envelopes similar to the one found in the back of Officer Silva's vehicle. The envelopes from Rogers' purse were the same size and color and had identical bank-related printing in the top and bottom left-hand corners as the envelope containing the substance found in Officer Silva's car.

A criminalist from the Oklahoma State Bureau of Investigation analyzed the rock-like substances found in the envelope in Officer Silva's vehicle. His analysis showed that the substance was cocaine base (crack), and that its total weight was 20.7 grams, a weight well above the five grams necessary for a trafficking conviction.

Six months after Rogers' car was seized, [Sergeant] Steve Gardella examined the car in the daylight at the police impound lot. He discovered that the light bulb that should have illuminated the tag was not in its holder but was instead in a socket outside the socket hole for the tag. Photographs Gardella took showed the socket suspended from the car outside the opening. Gardella said, however, that the bulb did light up "a little bit" (Tr. Vol. 2 at 15). Gardella also took photographs of the rear license tag showing that it was covered by a transparent plastic cover.

Doc. 16-3, *Rogers v. State*, No. F-2010-509 (Okla. Crim. App. 2012) (unpublished) (hereafter, "OCCA Op."), at 3-5.[2]

In Washington County District Court, Case Nos. CF-2009-45 and CM-2009-90, a jury convicted Rogers of trafficking in illegal drugs, in violation of OKLA. STAT. tit. 63, § 2-415 (2007 Supp.), after former conviction of more than two drug felonies; operating a defective vehicle, in violation of OKLA. STAT. tit. 47, § 13-101 (2001 Supp.); and improper tag display, in violation of

---

[2] For clarity, the Court's citations refer to the CM/ECF header page number in the upper right-hand corner of each document.

OKLA. STAT. tit. 47, § 1113 (2008 Supp.).[3]  Doc. 16-3, OCCA Op., at 1; Doc. 17-7, Tr. vol. 2, at 200-02.  Consistent with the jury's recommendations, the trial court sentenced Rogers to life without the possibility of parole and imposed a $100,000 fine for the drug trafficking conviction, and imposed a $100 fine for each misdemeanor conviction.  *See* Doc. 17-7 at 225; Doc. 17-9, Tr. Sent. Hr'g (May 24, 2010), at 24-25.

Rogers filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), raising 17 propositions of error.  Doc. 16-1, Pet'r App. Br., at 2-4.  In an unpublished opinion filed September 21, 2012, the OCCA affirmed Rogers convictions and sentences.  Doc. 16-3, OCCA Op, at 1, 35.  The United States Supreme Court denied Rogers' petition for a writ of certiorari on March 4, 2013.  *See* Doc. 2 at 4.  Rogers filed an application for post-conviction relief in state district court.  Doc. 16-4.  The state district court denied Rogers' application for post-conviction relief by order filed November 25, 2014.  Doc. 16-5.  Rogers did not file a post-conviction appeal with the OCCA. *See* Doc. 16 at 2.

Rogers filed the instant federal habeas petition (Doc. 2), along with a supporting brief (Doc. 13) on February 9, 2015.

## DISCUSSION

### I. Limited scope of federal habeas review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant habeas relief to a state prisoner "only on the ground that [s]he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In addition, before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies,

---

[3]  The jury acquitted Rogers of acquiring proceeds from drug activity.  Doc. 17-7 at 201.

*id.* § 2254(b)(1)(A), by "fairly present[ing] the substance of h[er] federal habeas claim[s] to state courts," *Hawkins v. Mullins*, 291 F.3d 658, 668 (10th Cir. 2002). A state prisoner is not required to cite "book and verse on the federal constitution" to fairly present a federal claim. *Picard v. Connor*, 404 U.S. 270, 278 (1971) (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)). However, the prisoner "cannot assert entirely different arguments from those raised before the state court." *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006).

If the state court adjudicates the merits of a state prisoner's federal claims, a federal court may not grant relief on those claims unless the prisoner demonstrates that the state court's adjudication of those claims either (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States," *id.* § 2254(d)(1); (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § 2254(d)(2). As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (alterations in original) (quoting *Williams*, 529 U.S. at 405, 406). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a

federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer*, 538 U.S. at 75-76). Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). As previously stated, the federal court must also presume the correctness of the state court's factual findings unless the state prisoner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The standards set forth in § 2254 are "difficult to meet" by design, *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Thus, as a precondition to obtaining federal habeas relief a state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even if a state prisoner overcomes § 2254(d)'s "formidable barrier," *Burt v. Titlow*, 571 U.S. 12, 16 (2013), federal habeas relief is not automatic. Instead, overcoming that barrier permits the federal court to review the state prisoner's constitutional claims *de novo*, rather than through AEDPA's deferential lens. *See Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014) (explaining that satisfaction of § 2254(d)'s standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [federal habeas court] to review de novo" petitioner's claims— without

deference to state court's decision—to determine whether petitioner is entitled to habeas relief).

And, even if the federal court finds constitutional error on *de novo* review, it "must assess the

prejudicial impact of [that] constitutional error . . . under the 'substantial and injurious effect'

standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate

court recognized the error and reviewed it for harmlessness." *Fry v. Pliler*, 551 U.S. 112, 121-22

(2007). Under the *Brecht* standard, "when a habeas court is in grave doubt as to the harmlessness

of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513 U.S. 432,

445 (1995).

## II.    Analysis

Rogers seeks federal habeas relief on five grounds:

Ground 1:    The district court refusing to disqualify the trial judge denied Petitioner due process of law under the United States Constitution and the Oklahoma State Constitution.

Ground 2:    The traffic stop of Petitioner was improper and violated Petitioner's rights under the Fourth Amendment of the United States Constitution and therefore all evidence seized must be suppressed.

Ground 3:    The evidence was insufficient to sustain the trafficking conviction.

Ground 4:    The evidence introduced by the State was insufficient to prove beyond a reasonable doubt that Petitioner had been convicted of prior felonies.

Ground 5:    The traffic stop exceeded the scope of the basis for the stop without any justifiable reasonable and articulable suspicion.

Doc. 13 at 2.

Respondent concedes, and the Court finds, that Rogers timely filed her habeas petition. Doc.

16 at 2; *see* 28 U.S.C. § 2244(d)(1). Respondent also concedes that Rogers exhausted her

constitutional claims by presenting them to the OCCA on direct appeal.[4] Doc. 16 at 2; *see* 28 U.S.C. § 2254(b)(1)(A). Respondent contends, however, that § 2254(d) bars habeas relief on Grounds 1 and 3; *Stone v. Powell*, 428 U.S. 465 (1976) bars habeas relief on Grounds 2 and 5; Rogers' failure to state a cognizable habeas claim bars habeas relief on Ground 4. *See* Doc. 16 at 5-23.

## A. Judicial disqualification (Ground 1)

In Ground 1, Rogers alleges she was denied a fair trial because the district court refused to disqualify the trial judge, Judge Curtis DeLapp. Doc. 13 at 6-11. Rogers appears to make three supporting arguments. First, she argues Judge DeLapp "had personal knowledge of disputed evidentiary facts concerning the proceeding" because he was the assistant district attorney who prosecuted her in a 1997 case and the State alleged her felony drug conviction from that 1997 case as one of six prior drug convictions supporting an enhanced sentence in this case.[5] *Id.* at 7-9. Second, and relatedly, Rogers argues Judge DeLapp's name appeared as the prosecuting attorney on the 1997 judgment and sentence document presented to the jury as evidence during the second

---

[4] Respondent qualifies this concession. Specifically, Respondent contends that portions of Rogers' Ground 1 and Ground 4 claims are unexhausted. *See* Doc. 16 at 9-10, 20-23. But Respondent argues these claims should be denied on the merits notwithstanding the failure to fully exhaust them. *Id.*; *see* 28 U.S.C. § 2254(b)(2) (providing unexhausted habeas claim may be denied on merits); *Hawkins*, 291 F.3d at 668 (discussing "fair presentation" requirement). The Court will address Respondent's exhaustion arguments in its analysis of each claim.

[5] In 2009, when Rogers' committed the drug trafficking offense in this case, OKLA. STAT. tit. 63, § 2-415 (2007 Supp.) provided one penalty for a conviction of trafficking more than five grams of cocaine base—life without parole—"[i]f the person has previously been convicted of two or more violations of [§ 2-415] or any provision of the Uniform Controlled Dangerous Substances Act which constitutes a felony, or a combination of such violations arising out of separate and distinct transactions."

phase of her trial.[6]  *Id.* at 7-9.  She acknowledges that Judge DeLapp's name was redacted, but argues the redaction was inadequate and suggests his name on that document may have improperly influenced the jury's second phase verdict.  *Id.*  Third, Rogers argues Judge DeLapp made a prejudicial comment to the jury during the second phase of her trial, further reflecting his bias against her.  *Id.* at 9-13.

"A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136 (1955).  "Due process guarantees 'an absence of actual bias' on the part of a judge."  *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (quoting *Murchison*, 349 U.S. at 136).[7]  In assessing an allegation of judicial bias, the relevant question is "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias."'"  *Williams*, 136 S. Ct. 1905 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009)).  Under this objective standard, a petitioner can demonstrate bias by showing either "actual bias" or the "appearance of bias."  *Fero v. Kirby*, 39 F.3d 1462, 1478 (10th Cir. 1994).  Nonetheless, the Supreme Court has recognized that "most matters relating to judicial disqualification [do] not rise

---

[6]  In Oklahoma, a criminal defendant being prosecuted for a second or subsequent offense has a statutory right to a bifurcated trial.  OKLA. STAT. tit. 22, § 860.1.  During the first phase of trial, the jury is "instructed to determine only guilt or innocence on the offense charged."  *Id.*  If the jury returns a guilty verdict, the State then submits evidence of the defendant's prior convictions during the second phase of trial, and the jury must "determine the fact of former conviction, and the punishment."  *Id.*

[7]  The Court acknowledges that the OCCA did not have the benefit of the Supreme Court's decision in *Williams* when the OCCA issued its 2012 decision affirming Rogers' convictions.  The Court finds *Williams* helpful, however, to the extent it explains the Supreme Court precedent as it stood in 2012.

to a constitutional level." *Caperton*, 556 U.S. at 876 (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948)).

Before trial, Rogers asked Judge DeLapp to recuse because he prosecuted her in Case No. CF-1997-42, when he served as an assistant district attorney, and the State planned to introduce the judgment and sentence document from that case as evidence supporting her enhanced sentence. Doc. 17-4, Tr. Mot. Hr'g (Mar. 26, 2010), at 2. Rogers also alleged that one of her cell mates overheard Judge DeLapp say he would "try to make sure that Ms. Rogers does not get to see the day of sun—daylight." *Id.* at 2-4. Judge DeLapp held a hearing on the recusal motion, denied making the comment allegedly overheard by Rogers' cell mate, noted that he had already ruled on several motions in the case, and declined to recuse. *Id.* at 3-5. Rogers sought rehearing on her recusal motion with the presiding judge, Judge Dwayne Steidley. Doc. 17-5, Tr. Mot. Hr'g (Apr. 7, 2010); Doc. 16-3, OCCA Op., at 12, 15. Following a hearing, Judge Steidley denied Rogers' motion, but ordered the State to redact Judge DeLapp's name from the judgment and sentence document at issue before submitting it to the jury. Doc. 17-5 at 22; *see* Doc. 16-3, OCCA Op., at 16.

On direct appeal, Rogers argued the presiding judge denied her due process rights under the federal and state constitutions by failing to disqualify Judge DeLapp. Doc. 16-1, Pet'r. App. Br., at 34. The OCCA rejected Rogers' argument. Doc. 16-3, OCCA Op., at 12-17. Applying its own precedent, the OCCA concluded that Judge DeLapp's participation in the 1997 case as an assistant district attorney did not support a finding that he was "actually biased against her" in this case or require his disqualification. *Id.* at 13; *see Sam v. State*, 510 P.2d 978, 981 (Okla. Crim. App. 1973) (declining to disqualify trial judge who prosecuted defendant in prior case; stating, "[t]he fact that [the trial judge] had prosecuted the defendant in a previous case does not, by itself, show prejudice

on the part of the judge"), *overruled on other grounds by Buis v. State*, 792 P.2d 427 (Okla. Crim. App. 1990).

The OCCA also rejected Rogers' argument that the State failed to comply with Judge Steidley's order to redact Judge DeLapp's name from the 1997 judgment and sentence document. Doc. 16-3, OCCA Op., at 16-17. First, the OCCA found that both a redacted and an unredacted copy of the document were admitted during the second phase of Rogers' trial. *Id.* at 16. But it noted Rogers' concession that "the record does not reflect whether either the redacted or unredacted copy was sent with the jury during their deliberations." *Id.* The OCCA declined to find error based on the "silent" record. *Id.* Second, the OCCA found Rogers did not object at trial when both documents were admitted or argue to the trial court that the redacted copy was not properly redacted. *Id.* The OCCA declined to find plain error based on Rogers' speculative argument that even if the jury received only the redacted copy, the jury might have been able to hold that copy "at just the right angle relative to a light source" and see Judge DeLapp's name. *Id.* at 16-17.

In her supporting brief and reply, Rogers argues the OCCA's decision is either contrary to, or an unreasonable application of, the Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540 (1994). Doc. 13 at 4-5; Doc. 24 at 1-6. Rogers correctly states the holding in *Liteky*: that the "extrajudicial source" doctrine applies to 28 U.S.C. § 455(a). Doc. 24 at 3; *see Liteky*, 510 U.S. at 554. But her reliance on *Liteky* is misplaced for two reasons. First, neither the question nor the facts presented in *Liteky* support that *Liteky* serves as the clearly established federal law governing Rogers' claim. *See House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings"). True,

*Liteky* discussed judicial disqualification. But the question presented in that case was whether the "extrajudicial source" doctrine applies to § 455(a), a subsection of the federal statute governing disqualification of *federal* judges, not *state* judges. *See Liteky*, 510 U.S. at 541 ("Section 455(a) of Title 28 of the United States Code requires a federal judge to 'disqualify himself in any proceeding in which his impartiality might reasonably be questioned.' This case presents the question whether required recusal under this provision is subject to the limitation that has come to be known as the 'extrajudicial source' doctrine."). Second, even if *Liteky*'s interpretation of § 455(a) informs the analysis of whether certain circumstances require disqualification of a state judge, *Liteky* expressly qualified its holding that the "extrajudicial source" doctrine applies to § 455(a) by explaining that "there is not much doctrine to the doctrine." *Id.* The Supreme Court stated:

> The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for "bias or prejudice" recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor*, than of an "extrajudicial source" *doctrine*, in recusal jurisprudence.

*Id.* at 554-55. Thus, aside from the fact that *Liteky* discusses recusal in interpreting a statute that does not apply to state judges, *Liteky*'s qualified holding on that issue directly contradicts Rogers' position that Judge DeLapp's recusal was required merely because he had prior knowledge of facts regarding her 1997 drug conviction based on his participation in the 1997 case. *See Liteky*, 510 U.S. at 555-56 ("[O]pinions formed by the judge on the basis of . . . events occurring in the course of . . . prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."); *see also id.* at

12

551 ("It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.").

If anything, *Liteky* reinforces the general proposition that a judicial disqualification claim requires a case-specific inquiry. *See* 510 U.S. at 554-55. And *Caperton* holds that inquiry is an objective one: Viewing the circumstances objectively, is an average judge in the position of the allegedly biased judge likely to be neutral? *See* 556 U.S. at 881. If the answer is yes, due process is satisfied. Here, relying on its own judicial recusal precedent, the OCCA determined that the average trial judge in Judge DeLapp's position, *i.e.*, a former assistant district attorney who prosecuted a defendant in a prior drug case and who is now presiding over a trial in which the jury must determine whether the defendant has prior felony drug convictions—is likely to be neutral. Doc. 16-3, OCCA Op., at 12-13. Rogers fails to demonstrate how the OCCA's decision on this point is either contrary to or an unreasonable application of clearly established federal law.

Likewise, Rogers fails to show the OCCA's application of the plain-error doctrine to reject her related improper-redaction argument was objectively unreasonable. As discussed, the OCCA rejected Rogers' argument on plain-error review. *See id.* at 16-17. The Tenth Circuit Court of Appeals "has observed that 'Oklahoma's plain-error test is rooted in due process.'" *Thornburg v. Mullin*, 422 F.3d 1113, 1124 (10th Cir. 2005). Thus, to the extent Rogers alleges a due process violation based on the admission of either an unredacted or an insufficiently-redacted copy of the 1997 judgment and sentence document, this Court must defer to the OCCA's ruling unless the OCCA unreasonably applied the plain-error test. *See id.* at 1125 (noting that the OCCA reviewed alleged evidentiary error for plain error and stating, "[b]ecause the OCCA applied the same test we

apply to determine whether there has been a due process violation, we must defer to its ruling unless it unreasonably appl[ied] [the plain-error] test").

As the OCCA found, during the second phase of Rogers' trial the State admitted both a redacted copy and an unredacted copy of the 1997 judgment and sentence document bearing Judge DeLapp's name. *See* Doc. 17-7 at 214-18; Doc. 17-8 at 39-43 (State's Exhibit 25, unredacted), (State's Exhibit 25A, redacted). Rogers neither objected to the admission of both documents nor challenged the quality of the redaction. *See id.* And, as the OCCA found, it is not clear from the record whether the jury was provided both copies or only the redacted copy. *Id.* The record does reflect, however, that (1) the State alleged Rogers had six prior felony drug convictions, (2) the State submitted as supporting evidence certified copies of six judgment and sentence documents reflecting those alleged prior convictions, and (3) only one of those six documents reflecting one prior felony drug conviction, State's Exhibit 25, contained Judge DeLapp's unredacted name. *See* Doc. 17-7 at 214-18. Under these facts, the Court cannot say that the OCCA unreasonably applied the plain-error test by Rogers' speculative argument that the jury not only saw Judge DeLapp's name on a judgment and sentence document but also improperly relied on the presence of his name on that document to support its ultimate finding that Rogers had two or more prior felony drug convictions.

Finally, Rogers alleges Judge DeLapp demonstrated actual bias during the second phase of her trial when he stated, "These types of cases are the toughest because you cannot prepare a jury for a second stage other than you know at some point in time you're going to have to do punishment in this case." Doc. 13 at 9 (quoting Doc. 17-7 at 227). The Court agrees with Respondent that Rogers did not present this factual allegation to the OCCA to support her judicial-disqualification claim. *See* Doc. 16 at 9-10; Doc. 16-1, Pet'r App. Brief, at 34-41. Regardless, this allegation of bias

lacks merit. As Rogers acknowledges, and the record clearly reflects, Judge DeLapp made this comment after the jury returned its second stage verdict. *See* Doc. 13 at 9; Doc. 17-7 at 226-27. In fact, he made this comment after he discharged the jury from service. Doc. 17-7 at 227. And, read in context, this comment suggests Judge DeLapp recognized some jurors may have been disturbed to learn that once they found Rogers had at least two prior felony drug convictions, the only sentencing option under Oklahoma law was a life sentence without parole. *See id.* at 227-28. Thus, the Court rejects Rogers' assertion that the challenged comment showed "such a high degree of favoritism to the prosecution" that "Judge DeLapp should have been recused to avoid tainting the jury during the second stage." Doc. 13 at 10.

Based on the foregoing analysis, the Court concludes the OCCA's decision rejecting Rogers' judicial-disqualification claim was neither contrary to, nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* § 2254(d)(1), (d)(2). Additionally, the OCCA did not unreasonably apply the plain-error test to when it rejected Rogers' related claim that the State failed to properly redact a judgment and sentence document admitted during the second phase of her trial. For these reasons, the Court denies habeas relief on Ground 1.

### B.  Illegal traffic stop (Grounds 2 and 5)

Next, Rogers alleges her Fourth Amendment rights were violated during the traffic stop that led to her arrest and convictions. Specifically, in Ground 2, Rogers alleges the traffic stop was not justified at its inception because Officer Walker's stated reason for the stop—that Rogers had a non-working tag light—was not supported by the evidence. Doc. 13 at 11-14. In Ground 5, Rogers further alleges "the officers expanded the scope and duration of the traffic stop without reasonable

articulable suspicion of criminal activity." Doc. 13 at 22-23. For support, she cites *Rodriguez v. United States*, 135 U.S. 1609 (2015), and argues Walker unnecessarily prolonged the stop to allow Sergeant McClintock to conduct a drug-dog sniff of her car. *Id.* at 25-27.

Respondent argues, and this Court agrees, that *Stone v. Powell*, 428 U.S. 465 (1976), precludes habeas relief on Fourth Amendment claims Rogers asserts in Grounds 2 and 5 of her habeas petition. Doc. 16 at 11-13. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494; *see also Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming district court's application of *Stone* to bar habeas relief when petitioner filed a suppression motion, "repeatedly objected to the admission" of allegedly tainted evidence at trial, and raised Fourth Amendment claim on direct appeal, and when "state courts thoughtfully considered the facts underlying petitioner's Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent").

The record in this case demonstrates that, like the petitioner in *Smallwood*, Rogers had a full and fair opportunity to litigate her Fourth Amendment claims in state court. Rogers first challenged the validity of the traffic stop during her preliminary hearing. There, at the close of evidence, Rogers moved the court to suppress evidence obtained from the traffic stop on grounds that (1) the stop was pretextual and not supported by reasonable suspicion of a traffic violation, (2) the stop was unnecessarily prolonged to allow the drug-dog sniff, and (3) the dog's alert was insufficient to support probable cause for the car search. Doc. 17-1, Tr. P. Hr'g (May 21, 2009), at 70-73, 75. The trial court considered the evidence presented at the hearing and denied Rogers' oral suppression

motion. *Id.* at 76. Rogers subsequently filed a written suppression motion, and the trial court held an evidentiary hearing on that motion. Doc. 17-2, Tr. Mot. Hr'g (Nov. 16, 2009), at 3. The trial court heard testimony from two witnesses, considered Rogers' argument that the stop was not justified at its inception because Officer Walker acted unreasonably in failing to confirm whether the tag light was working after she pulled over, and denied the suppression motion. *See id.* at 26-28. At trial, Rogers not only obtained a continuing objection to the admission of evidence obtained as a result of the traffic stop but also repeatedly objected each time such evidence was introduced. *See* Doc. 17-6, Tr. vol. 1, at 205-06, 214, 217, 219, 221, 222, 237, 290, 291, 294; Doc. 17-7, Tr. vol. 2, at 8, 11, 12, 57, 58, 59. Finally, Rogers asserted four Fourth Amendment claims on direct appeal. Doc. 16-1, Pet'r App. Brief, at 2. The OCCA thoroughly considered each claim in its decision, applying then-existing Fourth Amendment law. Doc. 16-3, OCCA Op., at 5-10. And, in doing so, the OCCA not only considered testimony presented at pretrial hearings and at trial but also independently reviewed the dash cam video of the traffic stop to analyze Rogers' Fourth Amendment claims. *See id.*

In her supporting brief, Rogers reasserts the Fourth Amendment claims she litigated in state court and argues the OCCA's adjudication of these claims resulted in a decision that was either contrary to federal law, based on an unreasonable application of federal law, or based on an unreasonable determination of the facts. *See* Doc. 13 at 11-14, 22-27. In Ground 5, she specifically argues the OCCA's decision is contrary to *Rodriguez v. United States*, 135 U.S. 1609 (2015). Doc. 13 at 25; Doc. 24 at 7-9. Relatedly, in response to Respondent's *Stone* argument, Rogers argues *Stone* does not bar habeas relief because the OCCA "wilfully refuse[d] to apply the correct and controlling constitutional standards," Doc. 24 at 7, and argues, "because *Rodriguez* was decided

after the [OCCA's] decision [Rogers] has not had an opportunity for full and fair consideration of her Fourth Amendment claim or the application of the correct Fourth Amendment constitutional standards."  Doc. 24 at 8.

Rogers' arguments demonstrate a misunderstanding of *Stone* as well as the limitations imposed by § 2254(d).  Together, *Stone* and § 2254(d) preclude habeas relief on Fourth Amendment claims if a state prisoner had a full and fair opportunity to litigate those claims in state court, *Stone*, 428 U.S. at 494, and the state court applied "the appropriate Supreme Court precedent," *Smallwood*, 191 F.3d at 1265, in an objectively reasonable manner, *Lockyer*, 538 U.S. at 75-76 and § 2254(d)(1). Significantly, the appropriate Supreme Court precedent consists only of the controlling Supreme Court holdings existing "as of the time of the relevant state-court decision."  *Lockyer*, 538 U.S. at 71-72 (quoting *Williams*, 529 U.S. at 412); *House*, 527 F.3d at 1015.

Because the record in this case demonstrates that Rogers had a full and fair opportunity to litigate her Fourth Amendment claims in state court and that the OCCA carefully considered those claims in light of then-existing Fourth Amendment standards (which did not include the Supreme Court's 2015 decision in *Rodriguez*), the Court denies habeas relief on Grounds 2 and 5.

### C.    Insufficient evidence to support drug trafficking conviction (Ground 3)

Next, Rogers alleges the evidence is insufficient to support her drug trafficking conviction. Doc. 13 at 15-18.  She argues, based on the trial evidence, no rational juror could have found her guilty as charged.  *Id.* at 15-18.

Under the Due Process Clause of the Fourteenth Amendment, a state must prove, beyond a reasonable doubt, every essential element of the crime charged.  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970).  *Jackson* supplies the clearly established legal

rule governing Rogers' sufficiency-of-the-evidence claim. *See Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007) (identifying *Jackson* as the constitutional standard for reviewing state habeas petitioner's sufficiency-of-the-evidence claim). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Id.* (internal citations omitted) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)); *see also id.* at 656 ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."); *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (noting that *Jackson* "standard requires [reviewing court] to accept the jury's resolution of the evidence as long as it is within the bounds of reason"). In applying the *Jackson* standard on federal habeas review, this Court looks to state law to determine the substantive elements of the crime. *Johnson*, 566 U.S. at 655. "[B]ut the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Id.*

Rogers challenges her conviction for trafficking in illegal drugs, in violation of OKLA. STAT. tit. 63, § 2-415 (2007 Supp.). As charged in this case, the State had to prove, beyond a reasonable

doubt, that Rogers (1) knowingly, (2) possessed, (3) more than 5 grams of cocaine base. *See* OKLA. STAT. tit. 63, § 2-415; Okla. Unif. Crim. Jury Instr. No. 6-13 (2d ed.); Doc. 17-6 at 176-77.

Rogers challenged the sufficiency of the evidence on direct appeal, and the OCCA rejected that challenge. Applying the *Jackson* standard, the OCCA considered the evidence, as set forth in the factual summary adopted in this Opinion, *see supra* pp. 2-3, and concluded that "[w]hen viewed in the light most favorable to the State, this evidence and the reasonable inferences to be drawn from it, was sufficient for any rational juror to have found beyond a reasonable doubt that Rogers possessed a trafficking quantity of cocaine." Doc. 16-3, OCCA Op., at 17-18.

In supporting brief, Rogers provides a truncated summary of the trial evidence and, based on her view of the evidence, suggests the OCCA's factual findings are not entitled to a presumption of correctness under § 2254(e)(1) because she has "sufficiently" rebutted that presumption. Doc. 13 at 11, 13. Thus, she argues, the OCCA's decision either unreasonably applied *Jackson* or was based on an unreasonable determination of the facts. *Id.* at 14.

The Court disagrees. Because the OCCA correctly identified the *Jackson* standard as the legal principle governing Rogers' claim, the question for this Court is whether the OCCA unreasonably applied the *Jackson* standard. *See Pinholster*, 563 U.S. at 182. As the OCCA found, and the record reflects, the State presented evidence at trial that Officer Walker found an off-white rock-like substance in the driver's seat, on the driver's side floor, and on the front passenger's seat of Rogers' car. Doc. 17-6, Tr. vol. 1, at 192-96, 201-06. While Walker searched Rogers' car, Officer Silva performed a pat down search on Rogers. *Id.* at 208-09; Doc. 17-7, Tr. vol. 2, at 76. Rogers told Silva she was wearing two sanitary napkins, and Silva felt a "crinkle" in that area but did not check it further. Doc. 17-7 at 80-81. Silva then transported Rogers to the Bartlesville jail. Doc. 17-6

at 209. On the way, Silva heard "rustling of paper and crunching in the backseat." Doc. 17-7 at 84. Silva noted that even though Rogers' hands were handcuffed behind her back, there was a lot of movement, "pushing around, moving around" in the backseat. *Id.* at 85. Silva subsequently found a white banking envelope stuffed in the corner of the rear seat where Rogers had been sitting. *Id.* at 87. Silva testified she had searched the patrol car before transporting Rogers and had not transported anyone since that search. *Id.* Walker testified that inside the white banking envelope found in Silva's patrol car he found two plastic baggies containing off-white rock-like substances similar to the substances he found in Rogers' car. Doc. 17-6 at 211-13. Walker also found banking envelopes in Rogers' purse that were the same size and color and had identical bank-related printing in the top and bottom left-hand corners as the envelope found in Silva's patrol car. *Id.* at 220-21. An OSBI analyst identified the substance found in the envelope recovered from Silva's patrol car as cocaine base and testified that the total weight of the substance was 20.7 grams. Doc. 17-7 at 48, 52, 53, 65.

Viewing this evidence in the light most favorable to the prosecution and giving proper deference to the jury's finding of guilt and the OCCA's rejection of Rogers' sufficiency challenge, the Court agrees with Respondent that Rogers fails to make the requisite showings under § 2254(d) to obtain habeas relief. Thus, the Court denies relief on Ground 3.

### D.    Insufficient evidence to support two or more prior convictions (Ground 4)

In Ground 4, Rogers claims the State failed to prove, beyond a reasonable doubt, that she had three prior felony convictions. Doc. 13 at 18. Additionally, she alleges she was denied her Sixth Amendment rights to confront the witnesses against her during the second phase of her jury trial. *Id.* at 19. As factual support of her Sixth Amendment claim, Rogers points out that the State

introduced certified copies of judgment and sentence documents and docket sheets as evidence of her prior convictions but failed to produce any live witnesses. *Id.* For legal support, Rogers cites *Jeffrey v. Martin*, No. 11-CV-772-CVE-PJC, 2014 WL 7345735 (N.D. Okla. Dec. 23, 2014) (unpublished) and *Cooper v. State*, 810 P.2d 1303 (Okla. Crim. App. 1991). *Id.* at 19-20; Doc. 24 at 10-11.

Because the State alleged that Rogers violated the drug trafficking statute after former conviction of two or more felony drug convictions, Rogers jury trial was bifurcated in accordance with OKLA. STAT. tit. 22, § 860.1. At the conclusion of the first phase, the jury found Rogers guilty of drug trafficking. Doc. 17-7 at 200-02. During the second phase, the State admitted certified copies of six judgment and sentence documents, as well as certified docket sheets, to support its allegation that Rogers had two or more prior drug felony convictions. *Id.* at 214-18.

On direct appeal, Rogers relied on *Cooper* to argue the "judgment and sentence documents by themselves, without additional identifying information, were insufficient to prove that she was the person who was convicted in those cases." Doc. 16-3, OCCA Op., at 19. The OCCA rejected that argument. *Id.* at 19-20. In doing so, the OCCA found the facts in this case distinguishable from the facts in *Cooper*, and concluded that, in this case, "the facts and circumstances were more than sufficient to establish that Rogers was the same person named in the judgment and sentence documents." *Id.* Specifically, the OCCA reasoned:

> First, while Rogers' last name is a relatively common last name, all of the judgment and sentence documents included her first and middle names "Bridgette Elaine," and all spelled the first, middle, and last names exactly the same. Thus, when "Rogers" was coupled with "Bridgette Elaine," Rogers' full name became a unique identifier for her. Second, all of the prior crimes were for distribution of cocaine or crack cocaine, and were therefore nearly identical in character to the offense charged here. Third, all of the prior convictions were from Washington County, Oklahoma, the same location as the instant offense.

Doc. 16-3, OCCA Op., at 20.

In her supporting brief and reply, Rogers continues to rely on the OCCA's decision in *Cooper*, and additionally cites this Court's unpublished decision in *Jeffrey*, to argue that the OCCA's decision in her direct appeal was contrary to clearly established federal law. Doc. 13 at 14-18; Doc. 24 at 10-11. She also suggests that *Cooper* supports her Sixth Amendment claim. Doc. 24 at 10-11. For several reasons, the Court finds that Rogers is not entitled to habeas relief on Ground 4.

First, to the extent Rogers' arguments could be construed as asserting a pure sufficiency-of-the-evidence claim alleging that the State violated her due process rights by failing to prove the fact of her prior convictions to the jury beyond a reasonable doubt, the Court agrees with Respondent that Rogers fails to state a cognizable habeas claim. As Respondent points out, the Supreme Court has "not extended *Winship*'s protections to proof of prior convictions used to support recidivist enhancements." Doc. 16 at 19 (quoting *Dretke v. Haley*, 541 U.S. 386, 395 (2004)); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

Second, to the extent Rogers challenges the OCCA's application of *Cooper* to the facts of this case, she also fails to state a cognizable federal habeas claim. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (reiterating that the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Even assuming OCCA misapplied its own holding in *Cooper*, that alone would not give rise to a constitutional claim. Moreover, even if the OCCA's decision in Rogers' appeal were directly "contrary to" the decisions in either *Cooper* or *Jeffrey*,

23

Rogers could not overcome § 2254(d)(1)'s bar because neither *Cooper* nor *Jeffrey* constitutes "clearly established Federal law *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (emphasizing that AEDPA "prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established'").

Third, and finally, to the extent Rogers alleges she was denied her Sixth Amendment right to confrontation when the State failed to produce live witnesses during the second phase of her jury trial, the Court agrees with Respondent that Rogers did not fairly present this claim to the OCCA on direct appeal. *See* Doc. 16 at 20; *Bland*, 459 F.3d at 1011. Rogers' primary argument in state court was a challenge to the sufficiency of the evidence, and she argued that *Cooper* was "controlling" on that issue. Doc. 16-1, Pet'r App. Brief, at 45. In the brief she submitted to the OCCA, and within the context of her *Cooper*/sufficiency argument, Rogers asserted, "The evidence presented violated the Confrontation Clause and the enhanced life without parole sentence in this case violates Due Process as it is based on insufficient evidence" under *Jackson*. *Id.* After noting that the State only introduced only "paper" evidence, she further asserted "[t]here has to be testimony backing up the paper, testimony from a witness who must be cross-examined." *Id.* In support of her last assertion, Rogers directed the OCCA to a footnote citing three law review articles. *Id.* As noted, a state prisoner need not cite "book and verse on the federal constitution" to fairly present a federal claim to a state court. *Picard*, 404 U.S. at 278 (quoting *Daugharty*, 257 F.2d at 758). But fair presentation of a Sixth Amendment confrontation claim requires something more than inserting a passing reference to the Confrontation Clause accompanied by a footnote citing secondary sources within a sufficiency claim that is grounded in state law. *See Prendergast v.*

*Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (noting "crucial inquiry" under fair-presentation requirement is whether "petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim").  Thus, the Court agrees with Respondent that Rogers' Sixth Amendment confrontation claim is unexhausted.[8]

In sum, Rogers fails to state a cognizable federal habeas claim in Ground 4.  And, to the extent she alleges a Sixth Amendment confrontation claim, that claim is unexhausted and undeveloped.  For these reasons, the Court denies habeas relief on Ground 4.

## *CONCLUSION*

For the reasons stated above, the Court concludes that Rogers has not established she is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  Therefore, the Court denies her petition for writ of habeas corpus.

## **Certificate of Appealability**

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the district court denies habeas relief by rejecting the merits of a petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable

---

[8]    Even assuming Rogers properly exhausted her asserted Sixth Amendment claim, she fails to cite any controlling federal law that would support her claim that the Sixth Amendment requires a state, proceeding in a bifurcated trial as provided under state law, to provide live witnesses to prove the existence of a criminal defendant's prior convictions.  Thus, regardless of whether she exhausted this claim, the Court would deny habeas relief on the merits.  *See* 28 U.S.C. § 2254(b)(2).

jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if the district court denies habeas relief on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The Court concludes that reasonable jurists would not debate the correctness of the Court's assessment of Rogers' Ground 1 and Ground 3 claims. Additionally, the Court concludes reasonable jurists would not debate its rulings that *Stone* bars habeas relief on Rogers' Ground 2 and Ground 5 claims and that her Ground 4 claim fails to state either a cognizable or an exhausted federal habeas claim. Consequently, the Court denies a certificate of appealability as to all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk of Court shall note the substitution of Debbie Aldridge, Warden, in place of Rickey Mohan, Warden, as party respondent.

2. The petition for a writ of habeas corpus (Doc. 2) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this case.

ORDERED this 30th day of March, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE